**UNITED STATES of America, Appellee,**

v.

**Allyn B. HEPP, Appellant.**

**No. 80–1840.**

United States Court of Appeals, Eighth Circuit.

Submitted June 1, 1981.

Decided Aug. 14, 1981.

Anthony S. Troia (argued), James E. Riha, Omaha, Neb., for appellant.

James H. Reynolds, U. S. Atty., N. D. Iowa, Cedar Rapids, Iowa, argued, for appellee.

Before ROSS, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

On April 24, 1979 Allyn Hepp was spending the evening socializing with friends at Al's Royal 400, a filling and service station owned by Hepp in Rockwell City, Iowa. All of the companions including Hepp had been drinking. Although there was conflicting testimony, the jury evidently determined that while the men were taking turns shooting an antique type muzzle loader pistol, Hepp shot a hole in the natural gas (methane) meter in the basement of the station. Upon smelling an odor of gas, one

of the group, Scott Sanders, turned off the gas. There is evidence that Hepp opened a window at the top of the basement steps and told Sanders to turn the gas back on. Sanders testified that Hepp said to "let it blow," although Hepp claims he never made that statement. Soon afterwards Hepp left the station to make a service call. While he was out, the leaking methane combined with oxygen in the air and was ignited by a spark of unknown origin. The resulting explosion substantially destroyed Al's Royal 400.

A jury convicted Hepp of maliciously damaging and destroying property used in interstate commerce by means of an explosive, in violation of 18 U.S.C. § 844(i).[1] The explosive alleged in the indictment was the mixture of methane and oxygen. United States District Judge Edward J. McManus imposed a five year sentence with all but four months suspended. On appeal Hepp contends that the methane and oxygen mixture is not an explosive within the meaning of the statute.

1. 18 U.S.C. § 844(i) provides:
   (i) *Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building*, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results shall also be subject to imprisonment for any terms of years, or to the death penalty or to life imprisonment as provided in section 34 of this title. (Emphasis added.)

2. Title XI of the Organized Crime Control Act of 1970 was enacted to protect interstate and foreign commerce by reducing the hazards to persons and property associated with the misuse of explosives without placing unnecessary restrictions on lawful uses of explosives. H.R. Rep.91–1549, 91st Cong.2d Sess. *reprinted in* 1970 U.S.Code Cong. and Ad.News, pp. 4007, 4040–41. Title XI controls distribution, transportation and storage of explosives, 18 U.S.C. §§ 842, 843, and provides criminal penalties for their intentional misuse. 18 U.S.C. § 844. While the avowed purpose for enactment of the statute was to combat bombing by terrorists and organized crime, *see* Explosives Control: Hearings on H.R. 17154, 16699 and 18573 Be-

We first consider the meaning of "explosive" in 18 U.S.C. § 844(i) to determine whether Hepp's acts fall within the meaning of the statute.[2]

The term "explosive" is used in two different contexts in Title XI. To be subject to the regulatory provisions of Title XI, the common purpose of a compound, mixture or device must be to function by explosion.[3] Regulated explosives include, but are not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters. 18 U.S.C. § 841(d). As noted in the legislative history of the Title, the word "explosives" in the regulatory context does not include certain common materials such as gasoline. H.R.Rep.91–1549, 91st Cong.2d Sess. *reprinted in* 1970 U.S.Code Cong. and Ad.News, pp. 4007, 4041.

Section 844, subparts (d) through (j) of Title XI, created new federal criminal offenses pertaining to unlawful use of explosives. For purposes of these crimes, Title

fore Subcomm. No. 5 of the House Comm. on the Judiciary, 91st Cong., 2d Sess., 64–67, 91–94, 287–288, those groups are not the exclusive targets of the Act, and terrorist activity is not necessary to support a conviction under the Act. *United States v. Schwanke*, 598 F.2d 575, 578 (10th Cir. 1979).

3. *See* 18 U.S.C. § 841(d), which provides:
   (d) Except for the purposes of subsections (d), (e), (f), (g), (h), (i), and (j) of section 844 of this title, "explosives" means any chemical *compound mixture, or device, the primary or common purpose of which is to function by explosion*; the term includes but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters. The Secretary shall publish and revise at least annually in the Federal Register a list of these and any additional explosives which he determines to be within the coverage of this chapter. For the purposes of subsections (d), (e), (f), (g), (h), and (i) of section 844 of this title, the term "explosive" is defined in subsection (j) of such section 844. (Emphasis added.)
   *See also* 18 U.S.C. § 841(c) (defining "explosive materials"); (e) (defining "blasting agents"); and (f) (defining detonator").

XI provides a separate definition of "explosive," with a somewhat different meaning. H.R.Rep., *supra, reprinted in* 1970 U.S.Code Cong. and Ad. News, pp. 4007, 4041:

> (j) For the purpose of subsections (d), (e), (f), (g), (h), and (i) of this section, the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, *and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.* (Emphasis added.) [4]

18 U.S.C. § 844(j).

Three categories of explosives are recognized in section 844(j). The first is "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, [and] smokeless powders." These items or devices, in contrast to the remaining ones listed, would all appear also to be subject to the regulatory provisions of the Title. *See* 18 U.S.C. § 841(c), (d), (e), and (f). [5]

The second type of explosive covered by section 844(j) is "explosive or incendiary devices within the meaning of paragraph 5 of section 232 of this title." [6] That paragraph is clearly intended to cover molotov cocktails and similar devices. H.R.Rep., *supra, reprinted in* 1970 U.S.Code Cong. and Ad.News, pp. 4007, 4047.

It is within the third category of explosives that the government contends a mixture of methane and oxygen would fall. That group includes "any chemical compound, *mechanical mixture,* or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture or device or any part thereof may cause an explosion." (Emphasis added.) At trial the government presented the testimony of Philip Wineman, an expert forensic chemist for the Bureau of Alcohol, Tobacco and Firearms, that when natural gas molecules randomly mix with oxygen molecules, an explosive mixture is produced. The result is a mechanical mixture: "The gas ... would move outward, sort of a cone shaped fashion, and would spontaneously mix the molecules, gas molecules or random thermal motion as are the molecules of the oxygen of the air .... That is diffusion. Diffusional mixing is mechanical mixing. The mixture that results is a mechanical mixture; fuel and air, or methane and oxygen." The defense presented no conflicting expert testimony.

■ As stated, explosives made from gasoline were generally exempted from regulation under Title XI. The legislative history indicates, however, that the exceptions applicable to the regulatory provisions of the statute are not applicable to its criminal sections. H.R.Rep., *supra, reprinted in* U.S.Code and Ad.News, pp. 4007, 4047. In light of the opinion of the government's expert that methane and oxygen are a mechanical mixture, which was not controverted by a defense expert, and in light of the broad language of the statute, we conclude that use of a mixture of methane and air may be criminal under the Act.

---

**4.** Paragraph 5 of section 232 provides:

> The term "explosive or incendiary device" means (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

**5.** The government suggests this is because these explosives are all inherently dangerous.

**6.** *See* note 4.

At this juncture, we observe that it may be doubted that Title XI was ever intended by the Congress to cause prosecution of the type of act committed by Allyn Hepp. In particular, we note that it was not the intention of the statute that the federal government substitute its criminal law enforcement activities generally for those of state and local authorities. H.R. Rep., *supra, reprinted in* U.S.Code Cong. and Ad.News, pp. 4007, 4014. *See United States v. Birchfield*, 486 F.Supp. 137 (M.D. Tenn.1980) (indictment under 18 U.S.C. § 844(i) dismissed because "explosive" used was a common means of arson and Title XI was not intended to extend federal jurisdiction to arson cases). Moreover, we are mindful that criminal statutes are to be strictly construed, with ambiguities resolved in favor of lenity. *United States v. Emmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973). But we are not persuaded that we are at liberty to create ambiguity in the broad but plain language of the Act by speculation as to whether Congress intended the Act to apply to acts of a social drinker at his own filling station in Rockwell City, Iowa. When the statute is unambiguous, judicial inquiry ordinarily is at an end. We ask not what the Congress means; we ask only what the statute means. *Grand Laboratories, Inc. v. Harris*, 644 F.2d 729, 737 (8th Cir. 1981) (Arnold, J., dissenting).

We turn to the final question presented on appeal—whether the evidence of malicious intent is sufficient to support the verdict.

After this case was argued February 12, 1981, we called for supplemental briefing, invited counsel for appellant to submit additional transcript material and treated the case as resubmitted June 1, 1981. In response to our invitation, supplemental briefs were filed and the transcript of appellant's testimony was filed.[7]

Appellant conceded in brief filed with the district court that his actions may have been negligent or indeed even reckless, but insists that there is no evidence warranting a conclusion that he acted maliciously.

We have examined the instructions given by the district court to the extent that those instructions have been presented to us and find them to be eminently correct in defining malice and criminal intent and in negating negligence and recklessness as being insufficient to support conviction.

We have examined such of the transcript material as has been submitted and have reviewed carefully the statements of counsel about other testimony not brought in by way of transcript.

It is settled that on review the evidence must be viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Schmidt*, 626 F.2d 616 (8th Cir. 1980), but that conviction cannot rest on evidence that no more supports guilt than innocence, *United States v. Jones*, 545 F.2d 1112 (8th Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

On the limited record before us,[8] we find that the jury might well have concluded that criminal intent should not be inferred since the defendant was merely involved in a drunken, reckless course of conduct in which to his detriment he destroyed his own property.

However, there appears to be substantial evidence that defendant was well aware of the consequences of his conduct, that although he was solvent financially he had substantial obligations to meet in the very near future, that insurance proceeds perhaps not excessive would alleviate cash shortage, and that he wished to change business locations but could not afford to do

7. Ordinarily an appellant who intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence will include in the record a transcript of all evidence relevant to such finding or conclusion. *See* F.R.A.P. 10(b)(2).

8. Since the record does not appear to include all of the testimony relevant to determination of intent, our review is handicapped and indeed summary affirmance might be in order for failure to present a full transcript. *See* note 7 *supra.*

so without selling the older station which was at some distance from the main highway through town.

In all the circumstances, we cannot say that the evidence was insufficient to warrant a verdict of guilty or that the district court erred in overruling appellant's motion for new trial.

The judgment of conviction is affirmed.