**UNITED STATES of America, Plaintiff,**

v.

**Norman COVALL, Wilbur Scott LeMoine, and John "Jack" Rooney, Defendants.**

**No. CR 82–4034.**

United States District Court, N.D. Iowa, W.D.

March 31, 1983.

**1086**

Asher Schroeder, Asst. U.S. Atty., Sioux City, Iowa, for plaintiff.

Gene Wickey, Sioux City, Iowa, Ray Rosenberg, Des Moines, Iowa, for Covall.

Frank Jackson, Dallas, Tex., for LeMoine.

Gary Wenell, Sioux City, Iowa, for Rooney.

## ORDER

O'BRIEN, District Judge.

This matter comes before the Court pursuant to pretrial motions on behalf of all defendants. This Court, in its Order of March 10, 1983, resolved many of the pretrial motions in this case. The Court also deferred ruling on several issues until an evidentiary hearing could be held. Based on the briefs and argument of counsel and the entire record herein, the Court rules as follows. The defendants' motions to produce are denied. Defendant Rooney's motion to dismiss for prosecutorial misconduct is denied. The defendants' motion to dismiss for failure to allege the use of an explosive is denied. The motion to dismiss the conspiracy count for failure to state an offense is denied.

At the first hearing in this matter, the Court directed the defendants to take initiative in securing the remaining documents, reports, etc. that were not in the possession of the United States Attorney. The Court also requested that the defendants work closely with the United States Attorney in attempting to secure evidence under the United States Attorney's open-file policy. No evidence within the possession of the United States Attorney has yet been refused to the defendants. The Court is convinced that the Government has given the defendants everything to which they are entitled at this point. With respect to materials not yet within the possession of the United States Attorney, the Government has agreed to expedite requests for forthcoming material and to turn them over as soon as these items come to Sioux City. The Court takes the United States Attorney at his word and will not order the United States to turn over other documents on the understanding that the United States Attorney has stated that the open-file policy will continue.

The Defendant Rooney has moved to dismiss the indictment for prosecutorial misconduct. Among the allegations in this motion are that the Assistant United States Attorney knowingly presented perjured testimony to the grand jury. The Defendant Rooney also alleges that the jury was not adequately advised of the plea bargain with the unindicted coconspirator, Barry Delaney. Further allegations state that the Assistant United States Attorney conducting the grand jury acted as a witness and included an overt act in the indictment for which he has no evidence.

At the hearing in this matter, counsel for Defendant Rooney admitted that he was not certain whether the testimony of Sally LeMoine before the grand jury was, in fact, perjured. He states, however, that the Assistant United States Attorney had a duty to impeach her with prior inconsistent statements. With respect to the unindicted coconspirator, it is clear that the grand jury was aware that his testimony resulted from a plea bargain but the grand jury did not know that he had been sentenced prior to their return of the indictment. The allegation that the Assistant United States Attorney testified before the grand jury is incorrect, as it is clear that he merely summarized prior testimony before the grand jury. Finally, the Court previously addressed the issue of whether there was evidence to sup-

port Overt Act 9(h) of the indictment.[1] It is still the Court's conclusion that motions addressing the sufficiency of the evidence should be made at the conclusion of the Government's case.

 The Court finds no prosecutorial misconduct sufficient to invalidate this indictment. The Defendant Rooney admits that he does not know whether the testimony of Sally LeMoine was perjured. This Court is convinced that there was sufficient accurate information to support the indictment. As long as there is some competent evidence to sustain the charge issued by the grand jury, an indictment should not be dismissed, *United States v. Levine,* 700 F.2d 1176 82–1604 (8th Cir.1983). The *Levine* case further states that a prosecutor has no obligation to search for and submit to the grand jury evidence favorable to the defendant's defense or negating its guilt when it is not requested by the grand jury. The Court believes that the grand jury should have been made aware of the sentence that Barry Delaney received. However, the Court also believes that the grand jury was sufficiently apprised of the plea bargain to enable them to adequately assess his credibility. The motion to dismiss for prosecutorial misconduct is therefore denied.

 All the defendants have moved to dismiss the indictment for failure to state an offense. The argument is that the substance alleged to be used to destroy the building was not an "explosive" within the meaning of 18 U.S.C. § 844(j). The Court held an evidentiary hearing on this matter at which Richard Tontarski testified for the United States. Mr. Tontarski is a forensic chemist with the United States Treasury Department Bureau of Alcohol, Tobacco and Firearms. Mr. Tontarski is clearly an expert in these matters as is established by his credentials, see Government Exhibit 1A–1E.

Mr. Tontarski's testimony can be summarized as follows. An explosion is a sudden release of pressure. The pressure is created by expanding gases. A combustion explosion is a type of explosion where heat is used to generate pressure.

There are several necessary elements to creating a condition under which an explosion can occur. The first condition necessary is some degree of confinement. That is, there must be an area within which pressure can build up. Mr. Tontarski stated that the substance used in this case could not create an explosive in, for example, an open field. The second element of an explosive condition is a temperature sufficient to produce vaporization from the combustible liquid. Third, to create an explosive condition, there must be oxygen and some ignition source. Mr. Tontarski also stated that, in his opinion, there must also be a potential for damage for a substance to be properly classified as an "explosive."

Mr. Tontarski was then given the following hypothetical condition and asked whether, in his opinion, an explosive was formed.

We have a basement of a building of a size approximately forty-seven feet by twenty-five feet with a ten-foot ceiling, no windows, a non-operating exhaust fan attached to a chimney, with the only other openings being a closed elevator shaft and an access stairway to this basement area.

Within this basement there are two compressors which operate refrigeration units on the floor above, on the first floor. Now, these compressors generate sufficient heat to raise the temperature in this basement area to a hundred twenty to a hundred and thirty degree temperature. In addition, we are adding to this room three gallons of paint thinner which was purposely spread throughout this basement area through the splashing of this paint thinner on numerous waxed cardboard boxes. I want you to assume for the purposes of this analysis that there are—the spreading of this accelerant throughout the basement area obviously

---

1. *See* pp. 5–6 of the Court's Order of March 10, 1983.

took several minutes.[2]

It was Mr. Tontarski's unequivocal opinion that an explosive was formed in that situation. He stated that a mechanical mixture of oxidizing and combustible units resulted from the natural mixing of the vaporizing paint thinner with the air (oxygen) in the room. The quantity expressed in the hypothetical was such that the ignition by fire may have caused an explosion. He noted that he could not state whether an explosion actually occurred, only that one *may* have occurred.[3]

As noted above, heat is necessary to produce sufficient vapors to form an explosive condition. The amount of heat necessary to produce such vapors is known as the "flash point." The flash point for all paint thinners, according to Mr. Tontarski, is between ninety-five degrees and one hundred fifteen degrees. Vaporization begins immediately upon exposure of the flammable liquid to air. Several minutes is sufficient vaporization time for an explosive condition to be created.

The defendant vigorously cross-examined Mr. Tontarski, but presented no evidence in resistance to his conclusions.

The Circuit Courts of Appeals are split on the issue of whether the situation outlined by Mr. Tontarski's testimony constitutes an explosive within the meaning of 18 U.S.C. § 844(j). Two primary authorities favoring the defendants' position are *United States v. Gelb,* 700 F.2d 875 (2d Cir.1983), and *United States v. Gere,* 662 F.2d 1291 (9th Cir.1981). In these cases, the Courts focus on language in the statutory history of 18 U.S.C. § 844(i) suggesting that the law was designed to combat the political bombings of the 1960's. These cases hold that it is error for courts to extend this statute to situations that are typically within state arson jurisdiction.

The majority of circuits addressing this issue have resolved the question in favor of the Government. The most notable of these opinions are *United States v. Hepp,* 656 F.2d 350 (8th Cir.1981) (mixture of methane and air is an explosive); *United States v. Atchley,* 699 F.2d 1055 (11th Cir. 1983) (mixture of acetone and oxygen is an explosive); *United States v. Agrillo-Ladlad,* 675 F.2d 905 (7th Cir.1982) (naphtha soaked newspapers ignited by burning newspaper is an explosive); *United States v. Poulos,* 667 F.2d 939 (10th Cir.1982) (gasoline is an explosive); *United States v. Hewitt,* 663 F.2d 1381 (11th Cir.1981) (gas poured down a chimney into a closed room is an explosive). These cases all focus on the provision of 18 U.S.C. § 844(j) describing an explosive as:

> Any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof *may* cause an explosion. (Emphasis added.)

In the *Hepp* case, the Eighth Circuit Court of Appeals set forth a summary of the testimony of the expert who concluded that the mixture of methane and oxygen could cause an explosion. *Hepp* at p. 352. This testimony was nearly identical to that presented before this Court on March 24, 1983.

The defendants cross-examined Mr. Tontarski on the definition of mechanical mixture. According to Mr. Tontarski, a mechanical mixture is one which occurs automatically or spontaneously. The defendants inquired as to whether the components of the mixture had to be easily separable in order to constitute a mechanical mixture. Mr. Tontarski denied that this was the case. The Court notes that the mechanical mixture in the *Hepp* case (methane gas and oxygen) were not easily separable and yet the mixture was found to be a mechanical mixture.

---

2. Pp. 35–36, Transcript of Proceedings, March 24, 1983.

3. Under the statute, an actual explosion need not take place as 18 U.S.C. § 844(i) proscribes only the use of explosives and not necessarily explosions.

 

The Court concludes that a plain reading of the statute, together with the *Hepp* decision (decided 11 months before this incident) and Mr. Tontarski's testimony make it clear that an explosive was present at the Hen House.[4] The criticism that has been given to the *Gelb* and *Gere* cases is further support for this Court's conclusion that the Eighth Circuit's rule in *Hepp* is correct.[5]

The defendants have moved to dismiss the conspiracy count in this case for failure to state an offense. It is their argument that the conspiracy indictment is defective in that it fails to allege that it was the object of the conspiracy to employ the use of an explosive to destroy the Hen House. However, the indictment alleges that, as part of the conspiracy, the Defendant LeMoine acquired a mid-range petroleum distillate (paint thinner) to be used in the destruction of the Hen House. The Court has found that the law gave these defendants sufficient notice that this particular use of paint thinner constitutes an explosive within the meaning of 18 U.S.C. § 844(j). Thus, the indictment sufficiently alleges a conspiracy to violate 18 U.S.C. § 844(i). Further, as the Eighth Circuit Court of Appeals recently stated, an indictment is generally sufficient if it sets forth the words of the statute itself, as long as those words fairly inform the defendant of the elements necessary to constitute the offense charged, *United States v. Powell*, 701 F.2d 70 (8th Cir.1983). The Court concludes that this indictment fairly informs the defendants of the crime with which they are charged. The motion to dismiss the conspiracy count is therefore denied.

The Court concludes that all motions, with the exception of the motion to dismiss the indictment for violation of the attorney-client privilege, before the Court have been ruled upon. If there are any motions that,

by inadvertence, the Court has overlooked, the parties should notify the Court immediately and it will supplement this opinion.

Upon the foregoing,

IT IS THEREFORE ORDERED that the motion to produce is hereby denied.

IT IS FURTHER ORDERED that all motions to dismiss currently pending are hereby denied.

---

4. This, of course, assumes that the facts supporting the hypothetical are established.

5. It should be noted that 18 U.S.C. § 844(i) was "clarified" partially in response to the *Gere* case. In *Gere*, a Los Angeles firefighter lost his life and many other firefighters were injured. The Senate passed this amendment on September 22, 1982 and referred to the *Gere* case as an unfortunate decision, 128 Cong.Rec. S11985 (1982). The House was similarly critical of the *Gere* case, 128 Cong.Rec. H4957 (1982). The strong dissent in *Gelb* argues that the majority failed to apply the literal meaning of the statute and failed to recognize the universally respected propensity of gasoline for destruction by explosion.