UNITED STATES of America, Plaintiff-Appellee,

v.

Jeffrey Michael LORENCE, Defendant-Appellant.

No. 82–2056.

United States Court of Appeals, Fifth Circuit.

May 23, 1983.

---

Tony Martinez, Brownsville, Tex., for defendant-appellant.

John M. Potter, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before WILLIAMS and JOLLY, Circuit Judges, and WILL *, District Judge.

JERRE S. WILLIAMS, Circuit Judge.

Jeffrey M. Lorence was convicted by a jury of maliciously destroying a building used in interstate commerce by means of an explosive, in violation of 18 U.S.C. § 844(i). On appeal, Lorence argues that the government lacked jurisdiction to prosecute because the fire charged in the indictment did not involve the use of an "explosive", as contemplated by the statute. Alternatively, he argues that there was insufficient evidence to support his conviction. Finding no merit to either claim, we affirm the judgment of the district court.

* District Judge of the Northern District of Illinois, sitting by designation.

1. At the time of the fire, two automobiles belonging to Lorence were housed in the brake

## I. FACTS

The building Lorence was convicted of destroying housed a complex of commercial businesses in Brownsville, Texas. Lorence had once rented the building and sublet the premises for use as an automotive brake shop, paint and body shop, and sign shop. Three months before the fire, Lorence was notified that his lease was being terminated because he was continually delinquent in the payment of rent and because the premises were unclean. Payments by the tenants were then made directly to the owner of the building, but Lorence maintained close relations with the operators of the shops, and had insured an inventory of "transmission kits" stored in the brake shop for $30,000.00.

On the morning of May 22, 1981, Lorence drove to the building's brake shop. He testified that he intended to do some repair work on a pick-up truck he had earlier taken to the shop.[1] It was a Sunday, and no one else was working. Lorence opened the garage to the shop and placed the pick-up, whose wheels had been removed, on a wrecker in order to transport it into the shop. The pickup, which had a fifty-five gallon drum two-thirds filled with gasoline in the back, had earlier been moved by the operator of the brake shop from inside the building to a parking place on the street. Shortly thereafter, there were two large explosions. Lorence was found by police sitting on the curb of the street outside the building, his head in his hands. There was a "strong smell" of gasoline on his clothing. Lorence told investigators that he had been surprised by the explosions after moving his truck inside the building, that he smelled of gasoline because he had handled gasoline in his efforts to start the wrecker to tow the truck into the garage, and that he believed he might accidentally have started the fire in the bathroom by turning on an air compressor. A government witness, however, testified that Lorence's explanation of the

shop. Evidence produced at trial indicated that Lorence owned five automobiles. Of these five, only the two in the brake shop were insured against loss caused by fire.

possible origin of the fire and explosion was impossible because the air compressor had been turned off at the time of the fire.

Testimony at trial by various government experts and inspectors indicated that the fire had begun in a bathroom adjacent to the brake shop and had spread through the complex's garage areas, ultimately causing at least one fifty-five gallon drum of gasoline to explode.[2] Analysis of materials remaining after the fire led the experts to conclude that layers of newspapers saturated with gasoline had been laid out in rows or "trailers"[3] from the bathroom toward the garage area, by which means the fire spread. Gasoline had additionally been poured over the hoods and roofs of several cars in the garage areas. Charred remains of newspapers were found inside the two vehicles in the brake shop which were owned and insured by Lorence. A partially empty canister of gasoline was found in the front seat of Lorence's stationwagon parked outside the building. The entire complex was gutted by the force of the explosions.

Evidence introduced at trial indicated that Lorence had suffered severe financial difficulties during the months preceding the fire. In addition to having been evicted for nonpayment of rent, Lorence had had several checks returned for insufficient funds, and a local bank had initiated foreclosure proceedings against a Midas Muffler Shop which he operated in Brownsville. A few months before the fire, Lorence told the operator of the paint and body shop that the complex was a "fire-trap" and that "one of these days [he] might burn it [himself]."

Following a trial before a jury, Lorence was found guilty. He was sentenced to five years imprisonment, which was suspended on the condition that he make restitution to the owner of the building. This appeal follows.

## II. INTERPRETATION OF 18 U.S.C. § 844(i)

Lorence was convicted under 18 U.S.C. § 844(i) which prohibits the malicious destruction of a building used in interstate commerce by means of an explosive.[4] He contends that spreading gasoline-soaked newspapers which ignited a fifty-five gallon drum of gasoline did not constitute the use of an "explosive" as contemplated by the Act. Thus, we must consider the meaning of "explosive" within 18 U.S.C. § 844(i) to determine whether Lorence's acts fall within the ambit of the statute.

Section 844(i) is part of Title XI of the Organized Crime Control Act, which establishes federal investigative and prosecutorial authority over the criminal use of explosives. It was passed by Congress in 1970 in response to the increasing incidences of bombing and destruction of federal and commercial property occurring at that time. H.R.Rep. No. 1549, 91st Cong., 2d Sess. 6, *reprinted in* 1970 U.S.Code Cong. & Ad. News 4007, 4013.[5] Title XI both regulates by controlling distribution, transportation

---

**2.** Lorence testified that he had taken the drum of gasoline from his truck and placed it in the brake shop immediately prior to the explosion. Four or five additional drums, one of which was partially full of gasoline, were also stored in the paint and body and brake-shops.

**3.** A "trailer" is a combustible material that is used to spread and direct a fire in a particular pattern.

**4.** The wording of the statute is as follows:
(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than

ten years or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.
18 U.S.C. § 844(i).

**5.** While the major purpose for enactment of the statute was to combat bombing by terrorists and organized crime, those groups obviously cannot be the exclusive target of the Act. Terrorist activity as such is not necessary to support a conviction under the Act. *See United States v. Schwanke,* 598 F.2d 575, 578 (10th Cir.1979).

and storage of explosives, 18 U.S.C. §§ 842, 843, and criminalizes by providing criminal penalties for their intentional misuse. 18 U.S.C. § 844.

The title contains two separate definitions of the term "explosive", which correspond respectively to these regulatory and criminal portions. With respect to the regulatory provisions, an "explosive" is limited to "any chemical compound, mixture, or device, *the primary or common purpose of which* is to function by explosion..." 18 U.S.C. § 841(d) (emphasis added). The purpose of this exclusion is to eliminate commonly used mixtures, such as gasoline and ammonium nitrate, a fertilizer, from interstate *regulation* as explosives. *See* Hearings on H.R. 17154, H.R. 16699, H.R. 18573 Before Subcomm. No. 5 of the Comm. on the Judiciary, House of Rep., 91st Cong., 2d Sess. 157, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4041. For purposes of sections 844(d) through (j) which deal with the malicious use of explosives, however, there is a different definition:

> (j) For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section, the term 'explosive' means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxi-

dizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j).

Under this provision "explosives" are defined as falling into three categories: (1) articles like gun powder and blasting material that are commonly used as explosives; (2) explosive or incendiary devices within the meaning of 18 U.S.C. § 232(5)(C); [6] and (3) chemical compounds or mixtures that may cause an explosion when ignited. *See United States v. Hepp,* 656 F.2d 350, 352 (8th Cir.1981); *United States v. Hewitt,* 663 F.2d 1381, 1389 (11th Cir.1981).

We note initially that the prosecution and the defense focused only on this third definitional category of "explosive," both at trial and on appeal. Accordingly, our review will likewise be limited to determining whether the gasoline used by Lorence in this case constituted "any chemical compound, mechanical mixture, or device that contains any oxidizing and combustible unit ... in such proportions ... that ignition by fire ... may cause an explosion." 18 U.S.C. § 844(j). We need not consider whether the gasoline-soaked newspapers and drum constituted an "incendiary bomb" within the meaning of 18 U.S.C. § 232(5)(C).[7]

---

6. Section 232(5) further defines the term "explosive or incendiary device" as follows:

> (5) The term "explosive or incendiary device" means (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

7. We need not consider a case that some courts have viewed as leading. In *United States v. Gere,* 662 F.2d 1291 (9th Cir.1981), the court

determined that a fire set for delayed ignition by the use of trailers soaked with photocopier fluid was not an "explosive or incendiary device." In *Gere,* the court focused exclusively on the definition of explosive set out in § 232(5)(C). There was no analysis as to whether the use of the flammable photocopier fluid would have satisfied the "chemical compound" definition we consider today. We note additionally that the Ninth Circuit's subsequent holding in *United States v. Cutler,* 676 F.2d 1245 (9th Cir.1982), that ignition of a trailer of gasoline did not satisfy the "chemical compound" definition was based solely on that court's holding in *Gere,* even though *Gere* did not address the "chemical compound" category. *See also United States v. DeLuca,* 692 F.2d 1277 (9th Cir.1982), in which the Ninth Circuit held that ignition of gasoline which had been

Lorence argues that because gasoline is frequently used as an accelerant in cases of "ordinary arson" Congress could not have intended to extend federal jurisdiction to arson involving the use of gasoline. But the law is otherwise. While it is true that arsonists bent on destruction of property will often resort to the use of gasoline as a means to start a fire or increase its intensity, this fact alone does not remove the use of gasoline from the purview of Title XI. An analysis of the language of § 844(j) supports the conclusion that gasoline can be an explosive when used in a manner to make it likely that an explosion will take place.

In the instant case, Lorence soaked layers of newspapers with gasoline. He placed these newspapers in a deliberate pattern so as to spread the fire in the direction of fifty-five gallon drums containing gasoline [8] and in the direction of several automobiles which also contained gasoline. Under these conditions, a violent explosion was highly likely to occur.

A chemist qualified as an expert in arson analysis testified on behalf of the government that gasoline is a "chemical compound" capable of causing an explosion, and thus technically satisfies the definitional requirements of § 844(j) even in the absence of an explosion. A recent decision in the Tenth Circuit follows this analysis and holds that spreading gasoline around a room to burn down a building violates § 844(i) even

though no explosion occurred. *United States v. Poulos,* 667 F.2d 939 (10th Cir. 1982). The Second Circuit has recently held otherwise. *United States v. Gelb,* 700 F.2d 875 (2d Cir.1983) (uncontained gasoline is not an "explosive" or "incendiary device" within the meaning of § 844(j)).

■ These two cases represent the borderline and more difficult situation where gasoline-soaked materials are used only as a means of creating a hot, spreading, and all-consuming fire in which no explosion occurs. We are not faced with such a case. We need consider only the situation where gasoline is deliberately used in such a manner that an explosion is likely to occur, and in fact does occur. The record in this case shows that the United States government exhibited no interest in Lorence's arson until analysis showed that an explosion had taken place.[9] In this case, the gasoline was a "chemical compound" which mixed with an "oxidizing unit"—the oxygen in the air in the brake shop—in such a way that "ignition by fire" caused an explosion. In construing a statute, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). We find here no indication either that Congress rejected the universally accepted definition of gasoline as a flamma-

---

spread inside a building did not constitute an explosive "air-fuel mixture" under § 844(i) on the basis of its prior decision in *Cutler.* But the court noted that, "[w]ere we considering this issue free from our prior decisions on § 844, we would adopt the government's position [that the air-fuel mixture was an 'explosive' under § 844(j) ] and *affirm the explosives convictions.*" *Id.* at 1280 (emphasis added).

**8.** Although it was not possible to ascertain which drum of gasoline exploded, it is uncontroverted that the defendant was responsible for bringing one drum partially filled with gasoline into the building shortly before the explosion. Evidence was also presented to the effect that the defendant had removed the drum's ventilator cap, ordinarily used to prevent a build-up of pressure of gasoline vapor within the drum. This ventilator had earlier been

placed on the drum by the owner of the brake shop.

**9.** Where an explosion has in fact occurred, both the Eighth Circuit and the Seventh Circuit have held that ignition of a volatile accelerant satisfies the statutory proscriptions of §§ 844(i) and (j). *United States v. Hepp,* 656 F.2d 350 (8th Cir.1981) (explosion caused by leaking methane gas combined with oxygen ignited by a spark of unknown origin constitutes a "chemical or mechanical mixture" within the prohibition of § 844(j)); *United States v. Agrillo-Ladlad,* 675 F.2d 905 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982) (naphtha-soaked newspapers strategically spread across floor of building and ignited by burning newspapers *is an "explosive" or "incendiary device" for purposes of prosecution under § 844(i)).*

ble liquid subject to being explosive, or that Congress deliberately excluded malicious users of this compound from prosecution.

An examination of the hearings held by the House Committee on the Judiciary reveals that Congress recognized that it was creating concurrent federal and state jurisdiction in certain cases of destruction by fire or explosion of buildings used in interstate commerce. In testimony explaining the administration bill, Assistant Attorney General Will R. Wilson explained that while "the provisions of this bill will, to a large extent, cover areas presently covered by State law, ... [we] do not intend that the federal government substitute for the enforcement activity of state and local authorities in this area." Hearings on H.R. 17154, H.R. 16699, H.R. 18573 Before Subcom. No. 5 of the Comm. on the Judiciary, House of Rep., 91st Cong., 2d Sess. 34, 35 (1970). *See also* 18 U.S.C. § 848. Rather, the guidepost of the law was to be its flexibility. Federal enforcement would be available when it was needed, but it would not be a substitute for vigorous state action. As further expressed by Assistant Attorney General Wilson "it is evident that the federal investigative and prosecutive authority contained in this bill must be used selectively.... This flexibility will enable us to achieve maximum economy of effort and to assure that Federal law enforcement *assists but does not displace* the efforts of the State and local officials in dealing with crimes involving explosives." *Id.* at 38 (emphasis added).

Moreover, as noted earlier, the term "explosive" excludes gasoline only in the *regulatory* context. Congress provided separate definitional sections with respect to the regulatory and the criminal provisions expressly for the purpose of making "the exceptions applicable to the regulatory provisions

of this Chapter [gasoline and other commonly used materials] *inapplicable to* [the criminal] sections." H.R.Rep. No. 1549, 91st Cong., 2d Sess. 70, *reprinted in* 1970 U.S. Code Cong. & Ad.News 4007, 4047 (emphasis added). Congress did not want to regulate all gasoline as an explosive, but it did want to make its intentional destructive use as an explosive a criminal offense.

We note finally that, as expressed by the Ninth Circuit in *DeLuca, supra,* "[we] shall not face this problem again." 692 F.2d at 1280. In response to the technical difficulties inherent in determining that a deliberately set fire involved an explosive,[10] and in response to the disagreement among the federal circuit courts as to whether the use of gasoline and other flammable liquids satisfies the explosive proscriptions in the statute, Congress has recently passed an Act to amend § 844(i).[11] *See* H.R.Rep. No. 678, 97th Cong., 2d Sess., *reprinted in* 1982 U.S. Code Cong. & Ad.News 2631, 2632. The amendment was specifically enacted *"to clarify* the applicability of offenses involving explosives and fire". Anti-Arson Act of 1982, Pub.L. No. 97–298, 96 Stat. 1319 (1982) (emphasis added). Under the amendment, where federal jurisdiction otherwise exists, destruction caused by intentional fire alone is subject to federal prosecution. This amendment does not apply to the case before us. But Congress saw a need to amend the statute to "clarify" coverage where property was destroyed by the use of gasoline and other flammable liquids regardless of explosive potential. This policy clarification strongly reinforces our conclusion that Congress originally intended Title XI to apply at least in cases where an explosion was likely and had in fact occurred, although gasoline was the flammable chemical compound which was the ingredient of both the fire and the explosion.

---

10. Identifying that a fire has been caused by an explosive involves an extensive physical and chemical inventory of the debris at the fire scene, and extensive chemical laboratory analysis of the debris.

11. Section 844(i) now reads: "Whoever maliciously damages or destroys, or attempts to

damage or destroy, by means of *fire or an explosive,* any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both...." (emphasis added).

## III. SUFFICIENCY OF THE EVIDENCE

Lorence next maintains that the evidence submitted at trial was insufficient as a matter of law to support his conviction. He claims that the government produced no evidence to prove that he was responsible for igniting the fire which led to the explosion.

■ In determining the sufficiency of the evidence, a court of appeals must view the evidence and all reasonable inferences which may be drawn therefrom, in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We will reverse only if a reasonably minded jury must necessarily have entertained a reasonable doubt of the defendant's guilt. *United States v. Alonzo,* 681 F.2d 997, 1000 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 386, 74 L.Ed.2d 517 (1982); *United States v. Herman,* 576 F.2d 1139, 1144 (5th Cir.1978).

■ As related earlier in this opinion, the government produced a vast array of circumstantial evidence which pointed to Lorence as the instigator of the fire. Lorence was in severe financial trouble. He had insured various contents of the destroyed brake shop for $30,000. Two of Lorence's automobiles which were in the shop at the time of the explosion had been insured against loss by fire, while the other three Lorence automobiles, which were not in the shop, were not insured against such a loss. Lorence was seen driving his truck, with a 55-gallon drum of gasoline in the back, into the brake shop shortly before the explosion. The ventilator on the drum had been removed. Lorence was found, after the explosion, sitting on a curb outside the shop. His clothes smelled of gasoline. He had matches in his pocket. Experts concluded that the fire had been started in the bathroom by the ignition of strategically-placed newspapers soaked in gasoline. An employee of the sign shop stated that he had used the bathroom an hour before the explosion and that there were no newspapers on the floor at that time. Experts testified that the fire had not been caused by faulty wiring, nor had the air compressor been turned on as Lorence had claimed. Lorence had earlier told the owner of the paint and body shop that the building was a "firetrap" and that he might burn it himself one day.

It is true that the government's case against Lorence as intentionally causing the fire and explosion was largely circumstantial. But circumstantial evidence is "intrinsically" no different from testimonial evidence. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 139, 99 L.Ed. 150 (1954). Moreover, whether the evidence is direct or circumstantial, the scope of our review remains the same. We must determine whether, viewing all reasonable inferences and credibility choices gathered from the evidence in the light most favorable to the government, the jury's verdict was supportable. *See* the careful summary of the law in *United States v. Bell,* 678 F.2d 547, 549 n. 3 (5th Cir.) (en banc), *cert. granted on another issue,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982). Certainly the jury here was presented with more than sufficient evidence on which it could reasonably predicate its determination of guilt.

## IV. CONCLUSION

We find that spreading gasoline-soaked newspapers and igniting them with the result that a fifty-five gallon drum of gasoline exploded and destroyed a building constituted the use of an "explosive" within the meaning of 18 U.S.C. § 844(i) and (j). Additionally, we find that there was sufficient evidence to support the jury's finding of guilt. The judgment of the district court is

AFFIRMED.