**In re Joe Ray HALL, Debtor.**

**Bankruptcy No. 3–83–00005.**

United States Bankruptcy Court,
E.D. Tennessee.

June 14, 1983.

John B. McKinnon, III, McKinnon, Fowler & Roach, Johnson City, Tenn., for Joe Ray Hall, debtor.

Sharon Green, Green & Green, Johnson City, Tenn., for Gail Hall.

### MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Tenn.Code Ann. § 26–2–301(a) (1980) provides that an individual shall be entitled to a homestead exemption, the aggregate value of which cannot exceed $5,000.00, upon real property owned by the individual and used by him as a principal place of residence.[1] The question before the court is whether an addition to a structure utilized as the debtor's place of business qualifies as "a principal place of residence." If so, the court must also determine whether the conversion of nonexempt property on the eve of bankruptcy precludes the debtor from claiming the exemption.

### I

The debtor claims a homestead exemption in a one-acre tract of real property, with improvements, located in Washington County, Tennessee. The improvements consist

---

1. Individuals who jointly own and use real property are entitled to homestead exemptions, the aggregate value of which cannot exceed $7,500.00. Tenn.Code Ann. § 26–2–301(a) (1980).

of: (i) a cinder block building containing 1,280 square feet (approximately 32 × 40 feet) used by the debtor to carry on his business of the repair and sale of motorcycles, motorcycle parts and accessories, and general mechanical work; and, (ii) an addition originally intended as a showroom for the debtor's inventory of motorcycles and accessories. Construction of the addition, which has dimensions of 32 × 14 feet, commenced during June 1982.

In July 1982, while construction of the addition was in progress, the debtor's wife, Gail Hall, left the debtor and commenced divorce proceedings. At the time of their separation Gail Hall and the debtor were living in a mobile home on property owned by the debtor's parents adjacent to the land in issue. Within a day or two after the separation, Gail Hall returned to the parties' mobile home and removed all of the beds, bedding, and other items. The debtor thereupon moved from the mobile home into his parents' unfinished basement next door, where he had resided before his marriage. The basement has a concrete floor, cinder block walls, and a toilet and shower which are open to the rest of the basement.

As of November 1, 1982, the debtor was two months delinquent on his obligation to the creditors holding a lien on the mobile home. The debtor could no longer afford the payments on the mobile home;[2] it was repossessed in mid-December 1982.

According to the debtor, after discussing the matter during November with Ralph and David Bagaley, two friends, in early or mid-December he began converting the unfinished showroom into an apartment. With the help of Ralph and David Bagaley, he boxed in the gabled ends of the addition, constructed a wall dividing the addition into two rooms, put in a drop ceiling, placed glass above and beside the door, placed drapes on the windows and door, wired the addition for electricity, put down carpeting, and added electric baseboard heating. A telephone extension was also run into the addition. No kitchen facilities, running water, sink, lavatory, or bathroom facilities were installed.

Further, according to the debtor, during the month of December 1982, he began moving his clothing and personal belongings, as well as some furniture, into the addition which he refers to as his "apartment." During the Christmas weekend of 1982, he "moved in himself and began using the apartment as his permanent residence." Since there were neither kitchen facilities nor running water in the addition, he continued to eat most of his meals and attend to his hygienic needs at either the home of his parents, some 200 feet from the garage structure, or his sister's home.

The debtor and Gail Hall were divorced in October or November 1982.[3] The property in issue was appraised at $22,500.00, at or about the time of the divorce, by Lloyd Fleenor, a local real estate agent. The debtor told Mr. Fleenor that the original purpose of the addition was to construct a showroom for his motorcycles, excess parts and accessories. The property is presently encumbered by a first lien deed of trust in the amount of $12,661.62. In addition, on December 30, 1982, David Bagaley filed a notice of lien for unpaid labor and materials in the amount of $2,000.00, pursuant to Tenn.Code Ann. § 66–11–102 (Supp.1982).[4] Four days later, on January 3, 1983, the debtor's chapter 7 bankruptcy petition was filed.

The debtor insists that he was using the apartment as his "principal place of residence" on January 3, 1983. He concedes, however, that when his minor daughter visits him (every other weekend from 6:00 p.m. on Friday until 8:00 p.m. on Sunday) he spends that time at his parents' home.

---

2. Gail Hall had contributed income to help meet living expenses of the debtor, herself, and their minor child.

3. Gail Hall testified that the parties were divorced during October 1982, but the debtor's schedules reflect that the divorce decree was entered during November 1982.

4. The attorney for the debtor also prepared the Notice of Lien.

Under the terms of their divorce decree, Gail Hall holds a judgment against the debtor, in the amount of $2,000.00.[5] On February 10, 1983, she filed an objection to the debtor's claimed homestead exemption. She avers that the real property alleged to be the debtor's principal residence is, in fact, not his principal residence. Mrs. Hall further contends that, in contemplation of bankruptcy, the debtor converted non-exempt property into exempt property in order to defeat the rights of his creditors.

## II

■ "Residence" is defined as "a factual place of abode." Black's Law Dictionary 1473 (4th Ed.1951). The proof is uncontradicted that the debtor was "residing" in the garage addition when he filed for bankruptcy on January 3, 1983, at least to the extent that he was using the addition for sleeping and living purposes. That date is controlling for the purpose of determining the exemptions available to the debtor. *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *Walkup v. Covington,* 173 Tenn. 7, 114 S.W.2d 45 (1938). Such habitation appears to qualify the garage addition as the debtor's principal place of residence, Tenn.Code Ann. § 26–2–301(a) (1980), under the mandate that exemption laws are to be construed broadly and liberally. *See Hinds v. Buck,* 177 Tenn. 444, 150 S.W.2d 1071 (1941). Thus, the debtor has surmounted the first objection raised by his ex-wife. Consequently, the court must address her second objection—that the debtor, in contemplation of bankruptcy, converted nonexempt property which was subject to execution into exempt property in which he would be entitled to a homestead exemption for the purpose of defeating his creditors.

The parties were divorced in October or November 1982. At or about the time of the divorce the debtor discussed the filing of a petition in bankruptcy with his mother; he discussed the possibility with his attorney prior to moving into the addition to the garage structure. In October 1982 the debtor told a real estate agent that he intended to utilize the addition as a showroom for motorcycle parts and accessories. He was assisted in the construction of the addition by two "friends" who filed a notice of lien in the amount of $2,000.00 against the property in question only four days before the debtor filed his petition in bankruptcy. The debtor's petition was signed on the same day the notice of lien was filed, and both were prepared by the same attorney.

The debtor's schedules reflect that between August 1982 and December 1982, immediately preceding his bankruptcy, the debtor divested himself of nonexempt property.[6] In August 1982 he sold a 1978 motorcycle and a motorcycle lift for the respective sums of $900.00 and $100.00. On October 18, 1982, he sold a 3-wheel Honda motorcycle for $2,000.00 to Ralph Bagaley (one of his "friends" who thereafter assisted him in the construction of the garage addition and on whose behalf a $2,000.00 mechanic's lien was subsequently filed). In December 1982 he sold a winch for $400.00. Yet, total cash and deposits on the date of bankruptcy amounted to only $40.00. See Statement of Affairs, ¶ 12; Schedules B–2, B–4.

The debtor's conduct immediately preceding bankruptcy clearly indicates an effort to place his property beyond the reach of creditors, especially the judgment debt of his ex-wife. His unsecured debts, excepting the $2,000.00 judgment in favor of his ex-wife, total only $1,493.80. This court therefore concludes that the debtor's move into the garage addition three or four days before signing his bankruptcy petition and seven or eight days before the petition was

---

**5.** The decree was entered in either October or November of 1982 in Case No. 3983 in the Washington County Circuit Court.

**6.** In addition to his homestead exemption, the debtor claims personal property exemptions of an aggregate value of $4,404.50. Specifically, he claims a $3,454.50 exemption against equipment and inventory, Tenn.Code Ann. § 26–2–102 (1980); a $200.00 exemption in personal clothing, Tenn.Code Ann. § 26–2–103 (1980); a $750.00 exemption in tools of his trade, Tenn.Code Ann. § 26–2–111(4) (1980).

filed was for the principal purpose of defeating the debt owing to his ex-wife.

In enacting the 1978 Bankruptcy Reform Act, Congress acknowledged "current law" permitted debtors to convert nonexempt property into exempt property before filing a petition in bankruptcy:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition . . . . The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.Rep. No. 95–595, 95th Cong., 2d Sess. 361, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6317.

Congress chose not to alter the effect of the then current law.

However, some cases among the law current when Congress enacted the Bankruptcy Code did not permit conversion of nonexempt assets into exempt assets on the eve of bankruptcy. One such example is *Shanks v. Hardin,* 101 F.2d 177 (6th Cir. 1939). Shanks owned a one-fifth undivided interest in a farm with his siblings. As a tenant in common he was not entitled to any homestead right in his interest in the farm. It was stipulated:

> "[I]n contemplation of bankruptcy, and in an effort to convert non-exempt property to exempt property, so that the same could not be reached by creditors, and that homestead might be claimed against creditors, which he would not otherwise be entitled to, and to defeat creditors, G.H. Shanks * * * " procured the execution by his brothers and sisters of deeds to himself, conveying 25 acres of the farm as his sole and separate property.

*Shanks v. Hardin,* 101 F.2d at 177.

Upon his voluntary petition, Shanks was adjudicated a bankrupt nine days after the deeds from his siblings were executed. Citing *Hollins v. Webb,* 2 Shan.Cas.Tenn. 581 (1877), as "controlling," the court of appeals determined Shanks was not entitled to a homestead exemption in the twenty-five acres. In *Hollins,* the debtor had partially paid for land he purchased at a chancery sale with proceeds received in consideration of a mortgage of his nonexempt personal property. The debtor attempted to establish a homestead exemption in the land he had purchased. The exemption claim was disallowed to the extent the mortgage proceeds were applied to the purchase because it would have permitted the debtor to convert assets liable for the payment of his debts to exempt property beyond the reach of his creditors. The *Hollins* opinion recites in part: "This, we think, would be to allow the perpetration of a fraud upon his creditors, and cannot be permitted." *Hollins v. Webb* at 583. See also *In re Plavsich,* No. 2–78–123 (Bankr.E.D.Tenn.1979).

■ Further, although courts generally agree that a debtor's conversion of nonexempt property into exempt property on the eve of bankruptcy is not fraudulent per se, extrinsic circumstances may indicate the commission of a fraud on the debtor's creditors. *In re Johnson,* 8 B.R. 650, 654 (Bkrtcy.S.D.1981). As pointed out, in Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy,* 31 Rutgers L.Rev. 615 (1978), it is logical to distinguish between situations that involve an intent to deprive creditors of assets and situations in which the debtor's purpose is actually to acquire exempt property.

> "Bankruptcy legislation and state exemption laws were not designed to protect the debtor who acts in bad faith to deprive his creditors of assets."

*Id.* at 638.

■ This court finds and concludes that the debtor, Joe Ray Hall, while insolvent and in contemplation of bankruptcy, established a homestead exemption in property, which was then subject to execution, for the express purpose of defeating the rights of creditors, particularly the rights of Gail Hall, his ex-wife.

The objection to the homestead exemption is sustained.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.