### In re Alan Roger BUTTS and Linda Butts, Debtors.

### Bankruptcy No. 84–05178.

United States Bankruptcy Court, D. North Dakota.

Sept. 12, 1984.

Thomas Aljets, Carrington, N.D., for debtors.

Jonathan R. Fay, Fargo, N.D., for Bank.

William J. Daner, Bismarck, N.D., for Trustee.

William Westphal, Minneapolis, Minn., Trustee.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Norwest Bank—Jamestown filed with the Court on June 19, 1984, an objection to

---

the exemptions claimed by the Debtors in the above-entitled bankruptcy proceeding. The Debtors filed their response to the Bank's objection, requesting that the objection be dismissed for lack of proper service or, in the alternative, that the Court determine that the exemption claims were allowable. A hearing on the objection to the exemption claims was held on August 7, 1984. As support for its objection, the Bank relied upon the facts set forth in the Debtors' Statement of Financial Affairs and bankruptcy schedules. The Debtors stipulated that the information contained in those statements and schedules was true.

## FINDINGS OF FACT

The facts disclosed in the Debtors' Statement of Financial Affairs are undisputed. The Statement of Financial Affairs discloses that the Debtors made the following transfers of property shortly before filing for bankruptcy relief:

| Property | Date of Transfer | To Whom Transferred | Consideration |
|---|---|---|---|
| 18,816 Shares of Aneta Meats, Inc. Stock | 03/12/84 | Henry Abrahamson Aneta, ND 58212 (Unrelated party) | $18,816.00 |
| 6,900 Shares of Prairie Inn, Inc. Stock | 03/02/84 | Henry Abrahamson Aneta, ND 58212 (Unrelated party) | $13,800.00 |
| Interest in Contract for Deed covering Auditor's Lots 25 & 26 located in the SW ¼ 17–146–66 | 03/29/84 | Town & Country Motors Carrington, Inc. 1318 Main Street Carrington, ND 58421 (Unrelated party) | $ 7,500.00 |
| NW ½ SW ¼ (78 Acres) | 03/10/84 | Roy Nelson & Rosella Nelson New England, ND 58647 (Roy Nelson is Linda Butts' uncle.) | $27,300.00 |

The cash obtained by the Debtors from the above enumerated transfers was disposed, as follows:

| | |
|---|---|
| Gate City Savings & Loan (House Loans) | $35,600.00 |
| Foster County Treasurer (Real Estate Taxes) | $ 7,500.00 |
| Internal Revenue Service (Income Tax Pymt.) | $ 2,317.45 |
| General Motors Acceptance Corp. (Auto loan) | $ 2,485.70 |
| Clothing (Various retailers) | $ 3,000.00 approx. |
| Dr. Tuhy, Carrington, ND (Optometrist) | $ 285.00 |
| Mastercard (current monthly bill) | $ 2,143.95 |
| Utilities | $ 1,100.00 |
| Prudential Life Insurance (Cash value—Life Ins.) | $ 4,000.00 |
| Current monthly bills | $ 2,500.00 approx. |
| Legal & Accounting Bill | $ 1,652.50 |

The balance was put in the Debtors' bank account and exists in the form of cash or cashier's check.

The Debtors acknowledge that the cash used to make the payments listed above was non-exempt property under North Dakota's exemption statutes. The Debtors have, however, claimed the equity in their homestead as exempt property under the North Dakota exemption statutes. That equity was obviously enhanced by the payments made on the house loans immediately prior to filing for bankruptcy relief. The Debtors have also claimed as exempt property the clothing and the cash value of life insurance policies which were purchased. The Bank contends that the disclosed conversions of property constitute blatant attempts by the Debtors to remove non-exempt assets from the hands of creditors who would otherwise have received distributions from the bankruptcy estate. The Debtors argue that the conversions of

property merely permitted them to make full use of the exemptions to which they were entitled under the exemption laws of the State of North Dakota.

## CONCLUSIONS OF LAW

Exemptions are provided in the bankruptcy context under section 522 of the Bankruptcy Code. A debtor is given the opportunity under section 522(b) of the Bankruptcy Code to claim exemptions upon commencement of his bankruptcy proceeding. *In re Hanson*, 41 B.R. 775 (Bankr.D. N.D.1984). The exemption statutes of the State of North Dakota are incorporated into the bankruptcy context under section 522(b)(2) of the Bankruptcy Code. Section 522 of the Bankruptcy Code and the state exemption statutes which it incorporates control the allowability of a debtor's exemption claims. The Bank's objection in this matter must first be gauged according to the provisions of section 522.

■ The starting point for interpreting the provisions of a statute is the language of the statute itself. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The United States Supreme Court has indicated that there is no need to resort to the legislative history of an act where a statute is clear and unequivocal on its face. *See United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1960). Similarly, the Eighth Circuit Court of Appeals noted that when the provisions of a statute are clear and unequivocal there is no need to resort to general rules of statutory construction nor is there any need to resort to the legislative history of the act. *See Arkansas Valley Industries, Inc. v. Freeman*, 415 F.2d 713 (8th Cir.1969). Currently, the United States Supreme Court appears to have adopted a more flexible approach towards the use of legislative history. The court recently stated that "[i]t is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to

its plain language." *United States v. Apfelbaum*, 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1979). At a minimum, therefore, the legislative history of an act must be examined to insure that a statute is not applied in a manner contrary to congressional intent which is clearly evidenced in the legislative history of the act. *See North Dakota v. United States*, 460 U.S. 300, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). It is arguable that this minimum analysis of the legislative history must be undertaken even where a statute appears unambiguous on its face. One court noted that "even though the statute appears clear on its face, inquiry must not stop there, but rather the court must also examine the statutory scheme and legislative history of the act to determine the scope of coverage." *United States v. Hepp*, 497 F.Supp. 348, 349 (N.D.Iowa 1980), aff'd, 656 F.2d 350 (8th Cir.1981). In the present instance, the legislative history surrounding section 522 of the Bankruptcy Code must be examined to ascertain its scope and intended application.

The legislative history supporting section 522 of the Bankruptcy Code is found in reports accompanying bills favorably reported out of the House and Senate Judiciary Committees. The Senate Report No. 989, dated July 14, 1978, provides, as follows:

> As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The report from the House Judiciary Committee contains similar language. The House Report, No. 595, dated September 8, 1977, provides, as follows:

As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. *See Hearings,* pt. 3, at 1355–58. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. These legislative comments may be viewed in *Historical and Revision Notes* following section 522 in West Publishing Company's pamphlet edition of the Bankruptcy Code. Section 522 of the Bankruptcy Code was ultimately amended in a compromise bill. The significant change in the compromised language of section 522 provided that states could limit a debtor's bankruptcy exemptions to those provided by state statute. *See* 124 Cong. Rec. H11095 (daily ed. September 28, 1980) (remarks of Cong. Edwards). It appears that the legislative histories prepared earlier were not affected by the subsequent amendments to section 522 of the Bankruptcy Code. First, the legislative history of both the House and the Senate set forth virtually identical language with regard to the issue of a debtor's conversion of non-exempt property to exempt property. Finally, the amendments to section 522 had no relation to the conversion issue. These legislative histories must, therefore, be recognized as statements of uniform congressional intent on this issue.

The legislative comments concerning the conversion of non-exempt property to exempt property have not been strictly followed by the courts. One decision characterized the congressional comments as "erroneous legislative history" exhibited by way of the West Note. *See Mickelson v. Anderson,* 31 B.R. 635, 638 (Bankr.D.Minn. 1982). Because the court in *Anderson* viewed the legislative history as an erroneous comment, the historical comments were disregarded and the court turned to case authority to resolve the issue. Although legislative comments may be useful in determining the scope of a statute, comments which purport to resolve an issue in an area over which the statute does not apply should be disregarded. It may be arguable in this instance that section 522 of the Bankruptcy Code does not control the propriety of exemption objections. Although the use of objections to an exemption claim are recognized under section 522(*l*), the statute does not enumerate what might be proper objections. It is inferred that an objection is proper where the exemption claims exceed the limits of the exemption statutes. Courts have also denied exemptions on the basis of equitable considerations, such as evidence of a debtor's "unclean hands." *See In re Hanson,* 41 B.R. 775 (Bankr.D.N.D.1984). Since section 522 does not enumerate proper exemption objections, the legislative history may be viewed as inappropriate comments in an area which Congress chose not to legislate. As was stated from the outset, however, section 522 generally governs the allowability of exemption claims. To the extent that the comments offer guidance when judging the allowability of an exemption claim, the legislative history should be viewed as a persuasive indication of congressional intent.

Even where the legislative history on the conversion issue is not totally disregarded by a court, the comments have been accepted and applied only in a qualified sense. The court in *In re Johnson,* 8 B.R. 650 (Bankr.D.S.D.1981), set out in full the House Judiciary Committee comments with regard to the conversion issue. The court in *Johnson* did not dispute the legitimacy of the comment but ultimately set out the test for resolving the conversion issue, as follows:

> The act of converting nonexempt assets into exempt assets does not, *by itself,* constitute fraud on the creditors. Extrinsic facts and circumstances must be in evidence to prove that the conversion of nonexempt assets into exempt assets was done with a fraudulent intent.

*In re Johnson,* 8 B.R. at 654 (emphasis added). The court in *Johnson* indicates

that the conversion will not be allowed if the objecting party can prove that the conversion was done with a fraudulent intent. Accordingly, a conversion of non-exempt assets to exempt assets immediately prior to filing for bankruptcy relief is not proper in all instances. The bankruptcy court for the Eastern District of Virginia subsequently set out the test for resolving this issue to be, as follows:

> Although courts agree that a debtor's conversion of his nonexempt property into exempt property on the eve of bankruptcy is not fraudulent per se, they conclude that extrinsic circumstances may indicate the commission of a fraud on a debtor's creditors ... Courts will deny a debtor the exemption if he obtained the assets pursuant to a scheme to defraud his creditors.

*In re White*, 28 B.R. 240, 243 (Bankr.E.D. Va.1983) (citations omitted). Again, pursuant to equitable principles, a court will deny the debtor his exemption claim where the exempt property was procured prior to bankruptcy filing with an intent to fraudulently remove property from the hands of his creditors. This is the same test applied by the court in *Anderson* after rejecting the legislative history as erroneous comments. Whether the legislative history is erroneous or merely ambiguous, the courts have construed the comments in a limited manner so as to allow a test which incorporates equitable principles. It appears to be universally acknowledged, therefore, that the debtor's exemption claim will be denied upon proof of conduct committed with fraudulent intent.

Bankruptcy Rule 4003(c) places the burden of proof in this matter upon the objecting party. The Court must find in the present instance that the Bank failed in its burden of proof. Although the Debtors' Statement of Financial Affairs acknowledges that a conversion of non-exempt property to exempt property was committed immediately prior to filing for bankruptcy relief, there is no proof that that conversion was done with a fraudulent intent. The mere fact of the conversion alone does not prove fraudulent intent. To find that such is the case would improperly place the burden of proof upon the Debtors who assert their exemption claim.

Accordingly, and for the reasons stated,

IT IS ORDERED:

That the objection by Norwest Bank—Jamestown to the exemptions claimed by the Debtors in the above-entitled bankruptcy proceeding is denied.