In re John W. BREUER and Myra K. Breuer, Debtors.

Edward F. SAMORE, Trustee, Plaintiff,

v.

John W. BREUER and Myra K. Breuer; and Lutheran Mutual Life Insurance Company, Heritage Way, Waverly, Iowa, Dennis Weeks, George, Iowa, Lorna Hollander, Ellsworth, Minnesota, Defendants.

Bankruptcy No. 84–05469.
Adv. No. 85–0004S.

United States Bankruptcy Court,
N.D. Iowa, W.D.

Aug. 30, 1985.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge, Sitting by Designation.

Edward F. Samore, Trustee for the Estate of the Debtors, John and Myra Breuer, filed a Complaint on January 10, 1985, to avoid a fraudulent transfer pursuant to section 548 of the Bankruptcy Code. The Trustee alleges that the Debtors' transfer of proceeds from sales of real estate into exempt life insurance policies, made approximately three weeks prior to filing of the bankruptcy petition, constituted an avoidable transfer under section 548. Defendant Debtors, by their Answer filed on January 30, 1985, denied that the transfer was made with the intent to hinder, delay or defraud creditors, and sought to have the Complaint dismissed. Trial was held August 6, 1985, before the undersigned, sitting by designation.

### FINDINGS OF FACT

The Debtors filed their Bankruptcy Petition on October 9, 1984. Debtor, John Breuer (BREUER), testified that Debtors first consulted Attorney Alvin J. Ford regarding their financial difficulties on September 1, 1984, at which time they knew nothing about bankruptcy law or Iowa exemption law. They again consulted Atty. Ford on September 13, 1984, at which time they discussed exemption statutes and learned they had a choice of exemptions, one of which was life insurance policies.

Subsequent to the September 13 meeting with their attorney, the Debtors began disposing of their interest in real property. Myra Breuer sold a remainder interest in her father's estate to Fredson's Corporation, which was apparently owned by her brothers and sisters for $50,000.00 which was the value placed upon the property by an appraiser. Also sold was their time interest in a condominium for $1,729.00 which was the amount Breuer testified that they had in it.

Following the sale of the above-mentioned real property, the proceeds were used to purchase a life insurance policy from Lutheran Mutual Life Insurance Company for an initial premium of $53,600.00. It is not clear as to precisely when the proceeds were paid to the insurance company. Paragraph 4 of the Complaint, admitted by the Debtors, states that the policy was dated September 18, 1984. However, Breuer testified that the proceeds from the real property sales were placed with the insurance company on October 1, 1984. The Court concludes, from the testimony, that October 1 was the date when the proceeds were placed with the insurance company. Breuer testified that the Debtors elected to place the sale proceeds in life insurance because he and his wife felt it provided the best protection for their family. He stated that they discussed the transaction but that the discussion did not involve their creditors nor the prospect of hiding of assets from creditors.

The Trustee alleges that the transfer in question violated section 548(a)(1) and section 548(a)(2) of the Bankruptcy Code. The parties do not dispute the fact that, in absence of a court finding supporting the Trustee's allegations, the insurance policy is exempt from Iowa law. No testimony was presented which indicated that the Debtors received less than the reasonable value of the property which they transferred.

### CONCLUSIONS OF LAW

#### 1.

 The Trustee alleges in his Complaint that the Debtors were insolvent on the date of the transfer to the life insurance company or became insolvent as a result of the transfer. However, insolven-

cy alone is not sufficient to constitute a fraudulent transfer under section 548(a)(2). A transfer under section 548(a)(2) must meet a two-part test if the transfer is to be avoided. To meet his burden with regards to each element, the burden of proof rests with the trustee. It must be shown that the debtor:

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(2)(A) and (a)(2)(B)(i). The Trustee presented no proof that the Debtors received less than a reasonably equivalent value for the property. Therefore, the Court finds that the transfer is not voidable under section 548(a)(2).

2.

The second allegation made by the Trustee is that the Debtors made the transfer or transaction with the intent to hinder, delay or defraud past and future creditors in violation of section 548(a)(1) of the Bankruptcy Code.

■ A debtor in bankruptcy is given the opportunity under section 522 of the Bankruptcy Code to claim exemptions upon the commencement of the case. *In re Hanson*, 41 B.R. 775, 778 (Bankr.D.N.D.1984). The Iowa exemption statutes are incorporated into a bankruptcy proceeding under section 522(b) of the Bankruptcy Code, and that section together with Iowa law control the allowability of the debtor's exemption claims. *In re Butts*, 45 B.R. 34, 36 (Bankr. D.N.D.1984); Iowa Code Ann. § 511.37 (West 1950). Thus, an analysis of the intent and purpose behind section 522 is appropriate before deciding whether the Debtors' actions, here complained of, violated section 548(a)(1).

One of the main purposes of the Bankruptcy Code is to provide honest debtors with a fresh start, and thus debtors are permitted to exempt certain assets and may even convert non-exempt property to exempt property on the eve of bankruptcy. *In re Lindberg*, 735 F.2d 1087, 1090 (8th

Cir.1984). The Bankruptcy Code allows debtors to take advantage of the same exemption statutes which would be available to them outside of bankruptcy. However, "even though the intent appears clear on its face ... the court must also examine the statutory scheme and legislative history of the Act to determine the scope of coverage". *See United States v. Hepp*, 497 F.Supp. 348, 349 (N.D.Iowa 1980), aff'd, 656 F.2d 350 (8th Cir.1981).

The undersigned, in a previous decision, addressed the legislative history of section 522 in the case of *In re Butts*, 45 B.R. at 36–37, where it was observed:

The legislative history supporting section 522 of the Bankruptcy Code is found in reports accompanying bills favorably reported out of the House and Senate Judiciary Committees. The Senate Report No. 989, dated July 14, 1978, provides, as follows:

As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The report from the House Judiciary Committee contains similar language. The House Report, No. 595, dated September 8, 1977, provides, as follows:

As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. *See Hearings*, pt. 3, at 1355–58. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

*In re Butts*, 45 B.R. at 36–37.

■ This Court, without more, will not find from the fact of conversion alone that

the conversion of non-exempt assets into exempt assets constitutes fraud on the creditors. Extrinsic facts and circumstances must be in evidence to prove that the conversion of the real property proceeds into life insurance was done with fraudulent intent. *See In re Johnson*, 8 B.R. 650, 654 (Bankr.D.S.D.1981)

■ Proof of actual fraudulent intent, an essential element of the Trustee's allegation under section 548(a)(1), may be gleaned from extrinsic circumstances which "indicate the commission of a fraud on a debtor's creditors ... [and] [c]ourts will deny a debtor the exemption if he obtained the assets pursuant to a scheme to defraud his creditors". *In re White*, 28 B.R. 240, 243 (Bankr.E.D.Va.1983). However, this burden, although not impossible, is very difficult for a trustee to meet. The trustee must prove by a preponderance of evidence that the debtor acted with the actual intent to hinder, delay or defraud its creditors. *See In re Clark*, 50 B.R. 122, 125 (Bankr.D. N.D.1985). Any lesser burden would substantially erode the "fresh start" policy behind exemption statutes.

■ Nevertheless, courts have found fact patterns where the conversion of non-exempt property to exempt property was done with the intent to defraud creditors. For example, a claimed homestead exemption of a debtor bankrupt who converted an unfinished showroom attached to his repair and mechanic garage, into an apartment was not allowed. *In re Hall*, 31 B.R. 42 (Bankr.E.D.Tenn.1983). The debtor's converted apartment in *Hall* had no kitchen facilities, running water, sink, lavatory, or bathroom facilities, and was moved into three or four days before the debtor signed his bankruptcy petition. *Id.* at 43, 44. Courts have also addressed the issue of fraudulent transfers when non-exempt assets are converted into exempt property, and debt equivalent to the value of the transfer alleged to be non-dischargeable. Rapid conversion of non-exempt assets to extinguish and reduce home mortgages, after arranging with creditors to be free of payment obligations until the following year, along with diversion of the daily business receipts into an account unknown to creditors and the debtor's business manager, is an example of the kind of fraudulent intent necessary to preclude debt from discharge. *In re Reed*, 700 F.2d 986, 991–92 (5th Cir.1983). The debtor in *Reed* used the funds in the secret account to repay a loan that had been a vehicle for the conversion. *Id.* at 992. The *Reed* court took careful steps in pointing out that the burden of proof may well be greater when addressing the avoidance of exemptions under sections 522 and 548 of the Bankruptcy Code, including state exemptions, than when determining the dischargeability status of a debt under section 727. *Id.* at 989–90.

This Court is loath to infer intent to delay, hinder or defraud creditors from the mere act of converting non-exempt assets to property that is exempt under state law. We well realize the inefficacy of state exemption laws which would result were we to find a section 548 transfer based on a lesser standard of proof.

The parties agree as to the substance of the transaction at issue, and the Debtors acknowledge that they converted the real property to an exempt insurance policy. However, from the foregoing discussion, the Court concludes there is no proof that the conversion was done with actual intent to hinder, delay or defraud creditors. Rather, the Debtors were simply taking advantage of their rights under Iowa law and section 522 of the Bankruptcy Code.

Accordingly, and for the reasons stated,

IT IS ORDERED that the Trustee's Complaint be DISMISSED with prejudice.