**In re Janice Ellen COVINGTON, Debtor.**

**Michael GIGANDET, Trustee, Plaintiff,**

v.

**Janice Ellen COVINGTON, Defendant.**

**Bankruptcy No. 93–01268–GP3–7.
Adv. No. 393–0217A.**

United States Bankruptcy Court,
M.D. Tennessee.

Aug. 26, 1994.

| Date | Time | Person | Rate | Fee |
|---|---|---|---|---|
| 8–3–91 | .15 | TGF | $115 | $17.25 |
| 8–8–91 | .20 | JSF | $ 45 | $ 9.00 |

Stephen M. Miller, Nashville, TN, for debtor/defendant.

T. Turner Snodgrass, Nashville, TN, for plaintiff.

### MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether Tennessee fraudulent conveyance law permits the Chapter 7 trustee to avoid this debtor's pre-bankruptcy purchase of a single premium insurance policy and transfer to family members of a remainder interest in real property. The transfers are avoidable. The following are findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

### I

Between 1982 and 1985 this debtor acquired three pieces of real property: (1) a residence known as the "Harrow Court" property; (2) a triplex, the purchase of which was financed by the sellers, James and Barbara Atkeison; and (3) an apartment building, also financed by the seller, James W. Pickle.

On June 2, 1989, the Harrow Court residence was destroyed by fire. In December 1989, the purchase money loan for the apartment building was in default and Pickle began foreclosure. This foreclosure was delayed by the filing of a Chapter 13 bankruptcy by this debtor's (former) husband. That Chapter 13 case was dismissed. In June 1990, Pickle completed foreclosure. In September 1990, Pickle sued the debtor for the deficiency and damages.

In March of 1991, the debtor received $53,-500 from State Farm Insurance to settle her claim for the Harrow Court fire. After payment of expenses, the debtor had $40,000 in cash.

The debtor consulted her accountant concerning this money. The accountant referred her to a Nashville attorney who is a member of the panel of bankruptcy trustees for this district and who specializes in bankruptcy law. On July 1, 1991, after consultation with bankruptcy counsel, the debtor purchased a single premium life insurance policy for $40,000.

On August 2, 1991, the Atkeisons sued the debtor to collect the balance of the purchase price for the triplex.

On September 26, 1991, after additional consultation with her accountant and bankruptcy counsel, the debtor conveyed the Harrow Court lot to her children, retaining a life estate. The children paid the debtor $3,000. The market value of the lot at the time of transfer was between $12,000 and $20,000.

The Harrow Court property and fire insurance proceeds were the debtor's only significant assets.

On November 12, 1991, Pickle obtained a judgment against the debtor for $110,365.13. Pickle began garnishing the debtor's wages. On December 6, 1991, the Atkeisons obtained a judgment against the debtor for $11,911.87.

Pickle filed suit in the Chancery Court for Davidson County, Tennessee on June 16, 1992 to avoid the transfer of the Harrow Court property as a fraudulent conveyance. On February 17, 1993, the debtor filed Chapter 7. The debtor claimed the cash value of the life insurance policy exempt pursuant to

Tenn.Code Ann. § 56–7–203.[1] The trustee removed Pickle's fraudulent conveyance action to this court and amended the complaint to allege that the purchase of the single premium life insurance policy was also avoidable pursuant to 11 U.S.C. § 544(b).[2]

## II

Tennessee law voids every conveyance made with the intent or purpose to delay, hinder or defraud creditors. Tenn.Code Ann. §§ 66–3–101, 66–3–308.[3] 11 U.S.C. § 544(b) permits a bankruptcy trustee to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an [allowable] unsecured claim."

The Tennessee Supreme Court has declared that conversion of nonexempt property into exempt property, with the purpose of placing it beyond the reach of creditors is a voidable fraudulent conveyance. *Hollins v. Webb*, 2 Tenn.Cas. (Shan.) 581 (1877). *See also In re Hall*, 31 B.R. 42, 45 (Bankr. E.D.Tenn.1983).

In *Hollins*, the debtor borrowed money using nonexempt personal property as collateral. He used the proceeds to reduce a mortgage on real property to create a homestead exemption. Holding that the debtor's actions constituted "a fraud upon his creditors, [which] cannot be permitted" the Tennessee Supreme Court explained:

> [t]he fraud seems to consist in this: the debtor who has property subject to his creditor's claim, by his own act places it beyond their reach, and secures to himself all the benefits to be derived from it.

*Hollins*, 2 Tenn.Cas. (Shan.) at 583.

The Sixth Circuit reached a similar result in *Shanks v. Hardin*, 101 F.2d 177 (6th Cir. 1939). Applying Tennessee law, the court denied a homestead exemption to a debtor who procured deeds to himself from his siblings for the purpose of shielding real property from creditors. Finding *Hollins v. Webb* to be controlling precedent, the Sixth Circuit held that a debtor who, in contempla-

---

1. Tenn.Code Ann. § 56–7–203 provides:

   The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the wife and/or children, or dependent relatives of such persons, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to such person.

2. 11 U.S.C. § 544(b) provides:

   The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

3. Tenn.Code Ann. § 66–3–101 provides:

   Every gift, grant, conveyance of lands, tenements, hereditaments, goods, or chattels, or of any rent, common or profit out of the same, by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or to deceive those who shall purchase the same lands, tenements, or hereditament, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, such person's heirs, successors, executors, administrators, and assigns, whose debts, suits, demands, estates, or interest, by such guileful and covinous practices as aforementioned, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding.

   Tenn.Code Ann. § 66–3–308 provides:

   Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud, either present or future creditors, is fraudulent as to both present and future creditors.

   Tenn.Code Ann. § 66–3–101 derives from the Statutes of 13 Elizabeth (Ch. 5) and 27 Elizabeth (Ch. 4). *State v. Nashville Trust Co.*, 28 Tenn. App. 388, 416, 190 S.W.2d 785, 796 (1944). Its predecessor was first enacted in Tennessee in 1801. *See* 1801 Tenn.Pub. Acts Ch. XXV, § 2. The current version first appeared in 1858. *See* Tenn.Code § 1759 (1858). In 1919 the Tennessee legislature enacted a uniform fraudulent conveyance law. *See* 1919 Tenn.Pub. Acts Ch. 125 § 2. Currently codified at Tenn.Code Ann. §§ 66–3–301–314, the uniform law supplements but does not replace its older relative. *United States v. Kerr*, 470 F.Supp. 278, 281 (E.D.Tenn. 1978); *Scarborough v. Pickens*, 26 Tenn.App. 213, 218, 170 S.W.2d 585, 587 (1943).

tion of bankruptcy, converts "property, subject to execution, into a homestead for the express purpose of defeating his creditors" has committed a fraud. *Shanks,* 101 F.2d at 178. *See also In re Hall,* 31 B.R. 42, 45 (Bankr.E.D.Tenn.1983) (objection to homestead exemption sustained where "the debtor, ... while insolvent and in contemplation of bankruptcy, established a homestead exemption in property, which was then subject to execution, for the express purpose of defeating the rights of creditors.").

The Tennessee courts recognize that fraudulent conveyance cases are fact intensive. *See Macon Bank & Trust Co. v. Holland,* 715 S.W.2d 347, 349 (Tenn.Ct.App.1986) ("Whether a transfer is fraudulent is determined by the facts and circumstances of each case."). The Tennessee appellate courts have identified many "badges of fraud" to guide the trial courts in divining a debtor's intent for fraudulent conveyance purposes:

1. The transferor is in precarious financial condition.
2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.
3. Inadequate consideration for the transfer.
4. Secrecy or haste in carrying out the transfer.
5. A family or friendship relationship between the transferor and the transferee(s).
6. The transfer included all or substantially all of the transferor's nonexempt property.
7. Retention by the transferor of a life estate or other interest in the property transferred.
8. Failure of the transferor to produce available evidence explaining or rebutting a suspicious transaction.
9. Lack of innocent purpose or use for the transfer.

*See Weaver v. Nelms,* 750 S.W.2d 158 (Tenn. Ct.App.1987); *Macon Bank and Trust Co. v. Holland,* 715 S.W.2d 347 (Tenn.Ct.App.1986); *Gurlich's, Inc. v. Myrick,* 54 Tenn.App. 97, 388 S.W.2d 353 (1964); *Union Bank v. Chaffin,* 24 Tenn.App. 528, 147 S.W.2d 414 (1940); *Bank of Blount County v. Dunn,* 10 Tenn. App. 95 (1929); *Grannis, White & Co. v. Smith,* 22 Tenn. (3 Hum.) 179 (1842); *Floyd v. Goodwin,* 16 Tenn. (2 Yer.) 484 (1835).

The transfers by this debtor are overwhelmingly tainted with badges of fraud. After listening to the witnesses and observing their demeanor, it is clear that this debtor converted the nonexempt fire insurance proceeds into an exempt single premium life insurance policy and transferred a remainder interest in the Harrow Court property to her children for the purpose of defeating the claims of her creditors.

The debtor was acutely aware of her substantial liabilities to the Atkeisons and to Mr. Pickle. The debtor discussed these liabilities with her accountant shortly after Pickle sued her. The accountant referred the debtor to bankruptcy counsel. After the first consultation with bankruptcy counsel, the debtor invested all of her liquid assets in a single premium life insurance policy. Such policies are exempt from the claims of creditors under Tennessee law. The second consultation with bankruptcy counsel took place after the Atkeisons filed suit and just weeks before judgment was entered for Pickle. This second consultation resulted in the debtor's transfer of real property to her children with the reservation of a life estate. The effect of this second transfer was to remove a fee simple interest in real property from the reach of the debtor's creditors.

The nature and timing of these transfers was not coincidental. The debtor's testimony that the Atkeison and Pickle lawsuits played no role in her decision to purchase the life insurance policy or to transfer all but a remainder interest in the Harrow Court property to her children was not believable.

The fire insurance proceeds, combined with the Harrow Court property constituted all of the debtor's assets. The debtor has offered no credible benign explanation for the purchase of a $40,000 single premium life insurance policy with a death benefit in excess of $150,000 by a debtor with no dependents. The transfer of a remainder interest in the Harrow Court property to the debtor's children for inadequate consideration with

the retention of a life estate is a classic example of a fraudulent conveyance. *Compare Macon Bank and Trust Co. v. Holland,* 715 S.W.2d 347 (Tenn.Ct.App.1986) (transfer of house to·debtor's three children for $1.00 with reservation of life estate was not a fraudulent conveyance where transferor was in poor health, the transfer balanced other financial transactions among the family members and the transferor was dependent upon the three children.)

These transfers would be avoidable by a creditor under Tennessee law and thus are avoidable by the trustee in bankruptcy.

·An appropriate order will be entered.

### ORDER

For the reasons stated in the Memorandum contemporaneously filed herewith, IT IS ORDERED, ADJUDGED and DECREED that the purchase of the single premium life insurance policy and the transfer of a remainder interest in the Harrow Court property are fraudulent conveyances recoverable by the.plaintiff.

IT IS SO ORDERED.